UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CALVIN DOBIE,

       Plaintiff,

vs.                                 Case No.  3:11-cv-1063-J-MCR

CAROLYN W. COLVIN,[1]
Acting Commissioner of the
Social Security Administration,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") on June 19, 2009, alleging disability beginning on December 31, 2007.  (Tr. 9, 108-110, 134).  The Social Security Administration ("SSA") denied his application

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 15).

initially on December 30, 2009, and upon reconsideration on March 20, 2010.  (Tr. 12).

As a result, Plaintiff requested and received a hearing before an Administrative Law

Judge (the "ALJ") on October 28, 2010, in Jacksonville, Florida.  (Tr. 27).  The ALJ

found Plaintiff not disabled on November 24, 2010.  (Tr. 22).  Subsequently, Plaintiff

requested a review by the Appeals Counsel, which was denied.  (Tr. 7-9).  Therefore,

having exhausted all administrative remedies, Plaintiff timely filed his Complaint (Doc. 1)

on October 28, 2011, seeking judicial review of the ALJ's final decision under 42 U.S.C.

§ 405(g).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since December 31, 2007, due to Major

Depression, Diabetes II, and Hepatitis C.  (Tr. 17, 140).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was fifty-five years old at the time the ALJ rendered his opinion.  (Tr. 31).

Plaintiff completed school through the twelfth grade.  <u>Id.</u>  Plaintiff also attended truck

driving school and while enlisted in the military, Plaintiff completed cook school.  <u>Id.</u>

Plaintiff worked as a truck driver, floor waxer, cook, janitor, laborer, and volunteer.  (Tr.

31, 34, 141).  Plaintiff alleged he became disabled on December 31, 2007 due to Major

Depression, Diabetes II, and Hepatitis C.  (Tr. 17, 140).  On November 19, 2009,

Plaintiff was evaluated by Kristjan Olafsson, Ph.D., a psychological consultant.  With

regard to Plaintiff's psychological status, Dr. Olafsson rendered the following opinion:

> Vocationally, claimant appears to be capable of
> understanding and following simple instructions and

2

directions.  He appears to be capable of performing simple
and most complex tasks independently.  His ability to
maintain attention and concentration for tasks appears
limited.  His ability to regularly attend to a routine and
maintain a schedule may be hindered by his current medical
condition. He appears to be capable of learning new tasks
with repetition. He appears to retain a good capability for
making appropriate decisions. He appears to be capable of
relating to and interacting appropriately with others. His
ability to deal with routine daily stress appears limited due to
depressive symptoms.

(Tr. 223).  Dr. Olafsson further recommended Plaintiff continue psychiatric treatment

currently scheduled with his primary care physician, along with vocational rehabilitation.

Id.  Dr. Olafsson's diagnosis included the following: Depressive Disorder, NOS;

Cognitive Disorder, NOS (attention, concentration, and memory); History of Opioid

Dependence; Personality Disorder, NOS; Hypertension; and Diabetes.  Id.

On December 7, 2009, Plaintiff presented to Baptist Behavioral Health for

psychological treatment.  (Tr. 228).  At this time, Plaintiff was a resident at the Clara

White Mission, a residential facility for the homeless.  (Tr. 226).  Plaintiff's current

diagnosis was Major Depression and his GAF was determined to be between 55 and

60.[3]  (Tr. 228).  On December 28, 2009, Plaintiff was evaluated by Dr. Gildegardo

Alidon.  (Tr. 229).  During the evaluation, Dr. Alidon indicated Plaintiff was moderately

limited in his ability to: understand, remember, and carry out detailed instructions;

maintain attention and concentration for extended periods; complete a normal workday

---

[3] A GAF score of 51 to 60 equates to moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational
or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and
Statistical Manual of Mental Disorders, 4th ed., Text Revision (2000) American Psychiatric Ass'n,
Washington, DC.

or workweek without interruption from psychological symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to set realistic goals or make plans independently of others.  (Tr. 229-30).

On January 5, 2010, Plaintiff was initially evaluated by his treating psychiatrist, Dr. Serge Vilvar.  (Tr. 256).  During the evaluation, Plaintiff underwent a mental status examination.  Thereupon, Dr. Vilvar made the following determinations regarding Plaintiff's mental status:

> Mr. Calvin Jerome Dobie is a 54-year-old African American male looking his stated age with fair eye contact and no gross psychomotor agitation noted.  Speech is clear, coherent, and goal directed.  Mood is described as anxious and high.  Affect is reactive.  There is no evidence of gross formal thought disorder except for mild racing thoughts.  The patient denied any auditory or visual hallucinations.  He denied any suicidal or homicidal ideations.  He is alert and oriented to time, place, and person with fair cognition, insight, judgment, proverb, and similarity interpretations.

(Tr. 257).  Subsequently, Dr. Vilvar made the following diagnosis: Bi-Polar Disorder, Mixed; History of Opiate Abuse; History of Alcohol Abuse, Deferred, Rule out Cluster B Traits; High Blood Pressure; Diabetes Mellitus; Hypercholesterolemia; Psychosocial Stressors, Moderate.  Id.  Dr. Vilvar continued Plaintiff's daily dosage of 20 mg of Citlopram and started Plaintiff on 600 mg of Lithium and 150 mg of Trazodone.  (Tr. 258).

On March 11, 2010, Mercedes DeCubas, Ph.D., assessed Plaintiff's mental residual functional capacity.  (Tr. 358).  Dr. DeCubas indicated Plaintiff was moderately limited in his ability to: understand, remember, and carry out detailed instructions;

4

maintain attention and concentration for extended periods of time; complete a normal

workday or workweek without interruption from psychological symptoms; perform at a

consistent pace without an unreasonable number and length of rest periods; respond

appropriately to changes in the work setting; and set realistic goals or make plans

independently of others.  (Tr. 358-59).  Further, Dr. DeCubas's narrative summary

regarding Plaintiff's functional capacity revealed the following:

> From [a psychiatric] perspective, [Plaintiff is] able to sustain
> goal directed activity in a routine setting.  Can function
> adequately as physical allows. [Plaintiff] is able to do routine
> tasks. [Plaintiff] is able to follow simple instructions & can
> take care of his needs as physical allows.  Continued
> [psychiatric treatment] will be helpful to him for support.
> Needs a routine setting to avoid increased stress.  Needs
> assistance in developing realistic plans.

(Tr. 360).

From February 2010 through August 2010, Plaintiff sought treatment from Baptist

Behavioral Health.  (Tr. 489-495).  On February 11, 2010, Plaintiff reported he was

doing better and was improving with his medications.  (Tr. 489).  On the other hand,

Plaintiff reported he was still getting angry, but that he was able to keep his mouth shut

and walk away.  Id.   Plaintiff denied any delusions or intrusive thoughts and indicated

he had no side effects stemming from his prescribed medications.  Id.

On March 11, 2010, Plaintiff reported he was doing better.  (Tr. 490).  He

reported he had a new girlfriend and that he was very happy.  Id.   Plaintiff also reported

he had moved to phase two of his housing program and reported he had more freedom.

Id.  Beyond that, Plaintiff reported he had been compliant with medications, had

experienced no side effects from his medication, had not been getting angry, and had

been sleeping much better.  Id.

On April 9, 2010, Plaintiff reported he was doing alright.  (Tr. 491).  He stated he broke up with his girlfriend and had a death in the family.  Id.  On May 7, 2010, Plaintiff reported that he was doing fine and had no auditory or visual hallucinations or side effects from his medication.  (Tr. 492).  On June 4, 2010, Plaintiff reported again that he was doing well and was not getting angry nearly as often.  (Tr. 493).  However, Plaintiff reported he was spending a lot of time in the house because he wanted to be alone.  Id.  Again, Plaintiff reported no auditory or visual hallucinations and no homicidal or suicidal thoughts.  Id.

On July 2, 2010, Plaintiff reported similar progress as previous visits.  (Tr. 494).  Particularly, Plaintiff reported he was doing very good and had no auditory or visual hallucinations or homicidal or suicidal thoughts.  Id.  Similarly, on August 6, 2010, Plaintiff reported progress that was consistent with previous visits.  (Tr. 495).  Namely, Plaintiff reported he was alright and he was doing fine.  Id.  As usual, Plaintiff reported no auditory or visual hallucinations, no homicidal or suicidal thoughts, and no adverse side effects from his medications.  Id.

On October 8, 2010, Plaintiff returned to his treating physician, Dr. Vilvar.  (Tr. 497).  During the visit, Dr. Vilvar completed a medical assessment of Plaintiff's ability to perform work-related mental activities.  In particular, the assessment required Dr. Vilvar to rate the degree of loss to Plaintiff's ability to perform work-related activities on a regular and continuing basis.  (Tr. 500).  Dr. Vilvar indicated Plaintiff suffered substantial loss in his ability to: make simple work-related decisions and respond appropriately to usual work situations.  Id.  Dr. Vilvar believed Plaintiff suffered extreme loss in his ability

6

to deal with changes in a routine work setting.  Id.  Finally, Dr. Vilvar indicated Plaintiff

suffered only slight loss in his ability to respond appropriately to supervisors and co-

workers.  Id.  Consequently, Dr. Vilvar estimated Plaintiff would accumulate four or more

work absences per month as a result of his mental condition, symptoms, and necessary

treatment.  Id.  Dr. Vilvar indicated it was his opinion that Plaintiff was not capable of

sustaining competitive (not sheltered) work on a regular and continuing basis.  Id.

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520.  First, if a claimant is working at a substantial gainful activity, he is

not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any

impairment or combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe impairment and is not

disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20

C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from

doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a

claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013.  (Tr. 14).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2007, the alleged onset date.  Id.  At step two, the ALJ determined Plaintiff had the following severe impairments: an affective disorder, personality disorder, drug addiction and alcoholism in remission, diabetes mellitus, obesity, and shoulder pain.  Id.  In addition, the ALJ noted Plaintiff's development of osteoarthritis; yet, he found it caused no more than minimal limitation and was therefore, non-severe.  (Tr. 15).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  Id. Specifically, the ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.08.  Id.  Specifically, the ALJ determined Plaintiff had mild restrictions in his activities of daily living.  Id.  The ALJ determined Plaintiff had moderate restrictions in social functioning, concentration, persistence or pace.  Id.  As for episodes of decompensation, the ALJ determined Plaintiff experienced no recent episodes, which had been of extended duration.  (Tr. 16).

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work as defined in 20 C.F.R 404.1567(c). With regard to Plaintiff's work capacity, the ALJ determined the following:

The claimant needs to avoid ladders or unprotected heights.

8

> He needs to avoid the operation of heavy moving machinery.
> The claimant needs a low stress work environment. He
> needs simple tasks and limited contact with the public. The
> claimant must avoid overhead reaching. The claimant has a
> 30 pound maximum weight lift limit.

Id.   Based on this RFC, the ALJ found Plaintiff capable of performing past relevant work

as a floor waxer.  (Tr. 20).  The ALJ based his determination on the testimony of the

vocational expert ("VE").  (Tr. 20-21).  In addition, at step 5, the ALJ found the existence

of other jobs existing in significant numbers in the national economy that Plaintiff could

perform.  (Tr. 22).  Accordingly, the ALJ found Plaintiff was not disabled.  (Tr. 22).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## B.    Issue on Appeal

Plaintiff argues one issue on appeal.  Plaintiff argues the ALJ erred by not giving appropriate weight to the opinion of Plaintiff's treating psychiatrist, Dr. Vilvar.  (Doc. 18, p. 6).  The Commissioner responds that substantial evidence supports the ALJ's decision to assign minimal weight to Dr. Vilvar's opinion.  (Doc. 19, p. 5).  Specifically, the Commissioner argues the ALJ's decision to assign less weight to Dr. Vilvar's opinion was legally justified because he had "good cause" for doing so.  (Doc. 19, p.10).

### Whether the ALJ Erred in Assigning Minimal Weight to
### Plaintiff's Treating Physician's Opinion

Plaintiff argues the ALJ erred in giving minimal weight to Dr. Vilvar's opinions contained in the October 8, 2010 evaluation of Plaintiff.  In that evaluation, Dr. Vilvar opined Plaintiff was not capable of sustaining competitive work on a regular and continuing basis.  (Tr. 500).  Further, Dr. Vilvar found Plaintiff suffered substantial losses in his ability to make simple work-related decisions and in his ability to respond appropriately to usual work situations, and that Plaintiff suffered extreme loss in his ability to deal with changes in a routine work setting.  Id.  Dr. Vilvar estimated Plaintiff

would accumulate four or more absences at work per month due to his condition, symptoms, and necessary treatment.  Id.  Finally, Dr. Vilvar believed Plaintiff suffered marked difficulty in his ability to maintain concentration, persistence, or pace and had repeated episodes of decompensation, each of extended duration.  (Tr. 498, 499).

    Plaintiff is correct that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241 (quoting Lewis, 125 F.3d at 1440).  Additionally, the ALJ must clearly articulate specific reasons for disregarding the opinion of a treating physician.  Id.

    In his decision, the ALJ provided several reasons for discounting Dr. Vilvar's opinions.  First, he observed Dr. Vilvar's opinion that Plaintiff was not capable of sustaining competitive work on a regular and continuing basis.  The ALJ found that opinion to essentially be a finding of disability.  The ALJ correctly noted that a finding of disability was a legal conclusion left to the Commissioner.  As such, the ALJ was not required to give that opinion any weight.  As for Dr. Vilvar's other opinions, the ALJ indicated he afforded them minimal weight because he believed they were not supported by the medical evidence of record and were inconsistent with Plaintiff's testimony.  (Tr. 19).  Additionally, the ALJ referenced Dr. Vilvar's notes of Plaintiff's episodes of decompensation.  The ALJ pointed out that while it was true Plaintiff had

suffered episodes of decompensation, Plaintiff had not had such an episode in the last three years.  (Tr. 19-20).

With respect to the ALJ's finding that Dr. Vilvar's opinions were not supported by the medical evidence of record, the undersigned agrees.  First, according to Dr. Vilvar's October 8, 2010 report, Plaintiff's mental condition deteriorated substantially from the time he initially evaluated Plaintiff on January 5, 2010 through his last evaluation on October 8, 2010.  During Plaintiff's initial visit, Dr. Vilvar noted Plaintiff was "alert and oriented to time, place, and person with fair cognition, insight, judgment, proverb, and similarity interpretations." (Tr. 257).  In addition, Dr. Vilvar found no evidence of gross formal thought disorder.  During the initial evaluation, Dr. Vilvar's opinion of Plaintiff's mental condition did not suggest abnormalities one would expect if Plaintiff was in fact disabled.  In other words, Plaintiff did not demonstrate any extraordinary mental disabilities during his initial evaluation.  However, just nine months later, Dr. Vilvar reported drastic changes in Plaintiff's mental condition in his final evaluation.  During this relatively short time frame, there are no records to support Plaintiff's drastic mental deterioration.

Further, the ALJ noted that the treatment notes from Baptist Behavioral Health indicated that medication was managing Plaintiff's mental impairments.  For example, the notes showed Plaintiff consistently reported he was doing well and that the medication was working without any side effects.  In addition, the notes showed Plaintiff often reported that his anger problems occurred less often.  Plaintiff also regularly denied the existence of delusions or intrusive thoughts, auditory or visual hallucinations, or homicidal or suicidal thoughts.  (Tr. 489-495).  Accordingly, the undersigned finds no

error in the ALJ's conclusion that Dr. Vilvar's opinions contained in the October 8, 2010 evaluation were not supported by the evidence of record.

The ALJ also noted that Dr. Vilvar's opinion was inconsistent with Plaintiff's testimony during the October 28, 2010 administrative hearing.  In his opinion, the ALJ noted Plaintiff reported he was able to attend to his personal care; which included dressing, bathing, and grooming.  (Tr. 15).  The ALJ also observed that Plaintiff indicated he was able to take long walks during the day and volunteered with the Mission and the main branch library for a significant portion of the day.  (Tr. 19).  During Plaintiff's administrative hearing, Plaintiff testified his medications were helping.  (Tr. 32).  In addition, Plaintiff testified he did laundry, cooked, washed the dishes, made the bed, vacuumed, swept, and mopped.[4]  (Tr. 35).  Similarly, Plaintiff testified he spent time reading books, magazines, newspapers, completed word searches, watched television, and listened to music on occasion.  (Tr. 36).  Moreover, Plaintiff testified the longest road trip he had taken in the past year was three hours to see his grandson in Georgia.  (Tr. 38).  The undersigned agrees that this testimony contradicts the extreme limitations imposed by Dr. Vilvar.

Plaintiff does not take issue with the ALJ's reasons for assigning minimal weight to Dr. Vilvar's opinions.  Instead, Plaintiff believes it was error for the ALJ to assign greater weight to the opinions of Dr. Olafsson, an examining psychologist, and the state agency doctor who reviewed the record on February 11, 2010, than to Dr. Vilvar, the

---

[4] Plaintiff challenged the ALJ's reliance on his activities of daily living to discount Dr. Vilvar's opinion.  However, the ALJ may take Plaintiff's activities of daily living into consideration to discover inconsistencies regarding the objective medical evidence in the record. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

treating psychiatrist.  (Doc. 18, p.7).  Plaintiff points out that Dr. Olafsson was a psychologist, rather than a psychiatrist (like Dr. Vilvar), and examined Plaintiff "before any meaningful treatment" began.  (Doc. 18, p.8).

Plaintiff is correct that Dr. Olafsson examined Plaintiff back in November 2009, two months before he began treatment with Dr. Vilvar in January 2010.  However, Dr. Olafsson's opinions were consistent with the treatment notes from Baptist Behavioral Health, which indicated Plaintiff was generally doing well with his medications. Additionally, Dr. Olafsson's opinions were consistent with those of Dr. DeCubas, who examined the entire medical file up to March 2010.  State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence.  20 C.F.R. § 404.1527(f)(2); SSR 96–6p.

To the extent Plaintiff argues it was error for the ALJ to give more weight to a non-treating doctor's opinions than to the treating doctor, the Court notes that the ALJ properly discredited Dr. Vilvar's opinions.  Once the ALJ has done that, he may give more weight to the opinion of a non-treating doctor, so long as the non-treating doctor's opinions are supported by the evidence.  See Flowers v. Comm'r of Soc. Sec., 441 F.App'x 735, 741-42 (11th Cir. 2011) and Childs v. Astrue, No. 2:07-cv-945, 2009 WL 902614, *5, n.5 (M.D. Ala. March 31, 2009) (noting that "[b]ecause the ALJ properly discredited [the treating physician's] opinion, he did not err by relying on the contrary opinions of the non-examining psychologists").  Here, the opinions of both Drs. Olafsson and DeCubas were supported by the medical evidence.

Further, the simple fact that Dr. Olafsson was a psychologist and Dr. Vilvar was a psychiatrist is not a sufficient reason to find error in the ALJ's handling of the evidence. Plaintiff has provided no legal support for his conclusion that the opinion of a psychiatrist is entitled to more weight than that of a psychologist.  Indeed, the Social Security regulations consider a psychologist an acceptable medical source.  Brandon v. Astrue, No. 1:09-cv-1004, 2010 WL 3781981, at *11 (N.D. Ga. Sept. 22, 2010) (citing 20 C.F.R. § § 404.1527(a)(2), 416.913(a)(2)).  Moreover, as pointed out in Brandon, "although the issue has not been addressed by the Eleventh Circuit, other courts have determined that the opinion of a psychologist is not entitled to less weight than that of a psychiatrist."  Id. (citing Crum v. Sullivan, 921 F.2d 642, 645 (6th Cir. 1990); White v. Shalala, 114 F.3d 1190 (6th Cir. 1997) (Table) (unpublished decision); Ulmer v. Comm'r of Soc. Sec., No. 07–CV–15446–DT, 2009 WL 514107, *9 (E.D. Mich. Mar.2, 2009); Saad v. Comm'r of Soc. Sec., No. 07–15506, 2009 WL 454650, *7 (E.D.Mich. Feb.24, 2009). But see Fuller v. Massanari, No. Civ.A. 00–0763–RV–M, 2001 WL 530425, *3 n. 3 (S.D .Ala. May 11, 2001) (noting that "although [the Court] generally considers a psychiatrist to be a 'better informed' source of information regarding a patient's condition than a psychologist, a licensed or certified psychologist is considered to be an acceptable medical source under the social security regulations . . . The Court acknowledges, however, that often-times, the psychologist works more closely with the patient than the psychiatrist.  So, it comes down to a case-by-case decision.")).

In sum, the undersigned finds substantial evidence supports the ALJ's decision to afford minimal weight to the opinion of Plaintiff's treating psychiatrist, Dr. Vilvar.

**IV.    CONCLUSION**

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence.  Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

Accordingly, after due consideration it is,

**DONE AND ORDERED** at Jacksonville, Florida, this __6th__ day of March, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

16